In the Matter of Jerry David HILL, Lois Mary Hill, Bankrupts.

F. Stannard LENTZ, Trustee, Plaintiff,

v.

The BANK OF COLORADO, Defendant.

No. 79–2005.

United States District Court, D. Kansas.

July 3, 1979.

Dennis L. Horner, Kansas City, Kan., F. Stannard Lentz, Hamill, Lentz, Neil & Dwyer, Shawnee Mission, Kan., for plaintiff.

Philip M. Kleinsmith, Kleinsmith, Johnson & Pedersen, Colorado Springs, Colo., Edward J. White, White & Groneman, Kansas City, Kan., for defendant.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

This action is presently before the court on appeal from the Bankruptcy Court. The stipulated issue is whether the Bank of Colorado lost its perfected and enforceable security interest because it took only a personal judgment against the bankrupt. The parties agree to the following facts: Jerry Hill executed and delivered various documents (promissory notes, security agreements and financing statements) giving the Bank a perfected and enforceable security interest in two promissory notes (hereinafter LDS Notes) naming Hill as the payee. The LDS Notes secured certain promissory notes (Bank of Colorado Notes) by which Hill borrowed money from the Bank. In May, 1976 the Bank of Colorado Notes were in default and the Bank brought suit upon them. In that action the Bank neither mentioned its security interest in the LDS Notes, asked the court to allow it to foreclose its security interest, nor asked the court to preserve its security interest. Judgment was entered on August 13, 1976 against Hill. All of the foregoing occurred in the state of Colorado while Hill and the Bank were both residents of Colorado. On November 4, 1976, Hill filed for bankruptcy as a resident of the state of Kansas. The Bankruptcy Court found that Colorado law applied, that the applicable Kansas and Colorado Uniform Commercial Code provisions were identical, that the Colorado courts had not yet addressed the issue and that a Kansas case *In re Wilson*, 390 F.Supp. 1121 (D.Kan.1975) was directly on point. *Wilson* holds that the Code requires no election of remedies but construes the "cumulative remedies" provision in such a way as to apply the doctrine of res judicata. Effec-

tively, the case requires all remedies to be pursued when a personal judgment is sought; otherwise they are waived. The Bankruptcy Court determined that the Bank lost its perfected security interest at the time it obtained an in personam judgment against Jerry Hill. Under this theory the Bank should have proceeded to foreclose on its security interest at the same time that it sought a judgment. The Bank of Colorado appeals the Bankruptcy Court's determination and contends the Kansas case does not correctly reflect the law in Colorado.

We have received the briefs submitted to the Bankruptcy Court on this issue. We have had the further benefit of a well written casenote on *In re Wilson* found at 25 Kansas Law Review 150 (1976). A hearing was held on May 17, 1979. At that time we informed counsel of the law review note and established a supplemental briefing schedule. The Trustee in Bankruptcy submitted a supplemental brief. We have received nothing further from counsel for the Bank of Colorado. The case is now ripe for disposition.

■ Bankruptcy Procedure Rule 810 provides: "Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous . . .." However, the conclusions of law need be given no weight but may serve as a starting point for the court's analysis. *In re LaMountain*, Bankruptcy Nos. 75–205–B5 and 75–206–B5 (D.Kan., *unpublished*, April 4, 1977) (Judge Rogers).

We agree with the Bankruptcy Court and the parties that Colorado law applies. The pertinent UCC provisions found in the Colorado Revised Statutes are as follows:

"When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in part 5 of this article and, except as limited by subsection (3) of this section, those pro-

vided in the security agreement. He may reduce his claim to judgment, foreclose, or otherwise enforce the security interest by any available judicial procedure. . . The rights and remedies referred to in this subsection are cumulative." CRS 4–9–501(1).

"When a secured party has reduced his claim to judgment the lien of any levy which may be made upon his collateral by virtue of any execution based upon the judgment shall relate back to the date of the perfection of the security interest in such collateral. A judicial sale, pursuant to such execution, is a foreclosure of the security interest by judicial procedure within the meaning of this section, and the secured party may purchase at the sale and thereafter hold the collateral free of any other requirements of this article." CRS 4–9–501(5).

Also relevant is Official Comment 6 to the Universal Commercial Code Section 9–501 that states:

"Under subsection (1) a secured party is entitled to reduce his claim to judgment or to foreclose his interest by any available procedure, outside this article, which state law may provide. The first sentence of subsection (5) makes clear that any judgment lien which the secured party may acquire against the collateral is, so to say, a continuation of his original interest (if perfected) and not the acquisition of a new interest or a transfer of property to satisfy an antecedent debt. The judgment lien is therefore stated to relate back to the date of perfection of the security interest. The second sentence of the subsection makes clear that a judicial sale following judgment, execution and levy is one of the methods of foreclosure contemplated by subsection (1); such a sale is governed by other law and not by this article and the restrictions which this article imposes on the right of a secured party to buy in the collateral at a sale under Section 9–504 do not apply."

■ To the best of our knowledge, Colorado has no caselaw directly on point. The issue then is whether the Kansas case of *In re Wilson* construing identical Kansas statutes in a fact situation on all fours with that now before the court represents the law to be applied in Colorado. There is much to be said for consistency when construing identical statutes of neighboring states in the area of commercial transactions. Nonetheless, we are convinced that the application of *Wilson* to Colorado is unwarranted.

Most important in our analysis is the indication that the Colorado courts would disagree with our holding in *Wilson*. In *Bilar, Inc. v. Sherman*, 572 P.2d 489 (Colo. App.1977) an appellate Colorado court addressed the question of a creditor's election of remedies under CRS 4–9–501 for the guidance of the trial court upon remand of the case. The court stated,

"The Code, and pertinent judicial decisions, establish that a secured creditor need not 'elect' his choice of remedies. He may pursue those methods of collection afforded under the Code or through judicial processes otherwise available. Nor by effectuating the latter course of action, does the creditor relinquish any rights obtained by virtue of his security interest. . . . Moreover, the Code itself provides that the creditor's remedies delineated in § 4–9–501 are 'cumulative.' " *Id.* at 491–92.

Although the issue addressed was not directly before the appellate court, the dicta is well reasoned, well researched, and offered in a context that increases its weight; namely, guidance to the trial court directly applicable to the factual situation before it. The court stated that the the creditor's security interest continued in any remaining property and was unaffected by the default judgment, levy and execution.

The court's analysis does not consider *Wilson* or the effect of the doctrine of res judicata. The clear indication of the court's language is that the creditor is not foreclosed from pursuing other remedies by a personal judgment. The opinion was written two years after *Wilson* but relies on cases and commentators that disagree with the

analysis of the Kansas court. *Foster v. Knutson,* 84 Wash.2d 538, 527 P.2d 1108 (1974); *Peoples Nat'l Bank of Washington v. Peterson,* 7 Wash.App. 196, 498 P.2d 884 (1972). J. White & R. Summers, *Uniform Commercial Code* § 26–4 (1972); 2 G. Gilmore, *Security Interests in Personal Property* § 43.7 (1965); Comment, *Cumulative Remedies Under Article 9 of the Uniform Commercial Code: An Answer to Fuentes v. Shevin,* 14 *Wm. & Mary L.Rev.* 213 (1972).

The Washington cases relied upon in *Bilar* support the Bank's contentions. *Peoples National Bank* stresses the plain meaning of the word "cumulative" used in UCC § 9–501(1). The court there turned to Webster's Third New International Dictionary (1969) defining cumulative as: "Increasing in size or strength by successive additions *without corresponding loss* . . . " (emphasis added.) The court held that a creditor could simultaneously proceed to a private sale of collateral for a debt and sue for a judgment on the same debt. *Wilson* would also seem to support the simultaneous assertion of such rights. The Washington Supreme Court applied the holding of *Peoples National Bank* in *Foster, supra,* and quoted with approval the following comment on § 9–501 from Gilmore, *supra,* at 1209–10:

"If drafting can do the job, this forthright statement should put the issue to rest once and for all. Nothing the secured party may do to collect his debt through the process of the law courts will operate to destroy his security interest vis-a-vis the debtor, or to impair its priority over third parties . . . It would be oversanguine to hope that § 9–501 in its final version will, despite its forthrightness, put an end to the argument. The election of remedies doctrine is dear to the hearts of many lawyers and procedural reforms are always bitterly resisted. We may assume that the argument will continue to be made that the action on the debt bars a later resort to the security. It is however, hard to imagine that the argument can be successful if the provisions of §§ 9–501(1) and (5) are

effectively presented to the court." (Footnotes omitted).

The Bank cites other cases holding the creditor's use of one remedy does not preclude the later use of another remedy. *KMAP, Inc. v. Town & Country Broadcasters, Inc.,* 49 Cal.App.3d 544, 122 Cal.Rptr. 420 (1975); *McCullough v. Mobiland, Inc.,* 228 S.E.2d 146 (Ga.App.1976); *Pruske v. Nat'l Bank of Commerce of San Antonio,* 533 S.W.2d 931 (Tex.Civ.App.1976).

Additionally, the Bank contends that a commentator recognized in Colorado as "the authority" secured transactions indicates the reasoning of *Wilson* is not accepted in Colorado. Hellerstein, *Secured Transactions* (1967). At 108 Hellerstein states, "There is no election of remedies under the Code and the rights of a secured party are cumulative. Pursuing one remedy does not preclude the secured party from pursuing other remedies."

Standing in lonely opposition to the above is *Wilson.* Our research reveals no additional cases relying on the res judicata holding of *Wilson.* The Trustee in Bankruptcy has offered no additional cases. The casenote in the Kansas Law Review emphasizes the roots of *Wilson* are deep in Kansas pre-UCC and real property law. The note criticizes *Wilson* on both legal and policy grounds.

Given that Colorado law applies to the fact situation at hand, we are unwilling to apply the Kansas case simply because it issued from this court. There are clear indications that Colorado would not recognize the holding of *Wilson.*

In further support of this result is the fact that the Colorado judgment against Hill specifically precludes execution while partial payments are being received according to a court established plan. An accounting rendered May 3, 1978, shows payments were made through April 1978. There is no evidence that any payments were missed. Because the Bank complied with the court order and did not execute on the judgment, the Bank was not entitled to rely on CRS § 4–9–501(5) providing for

liens (not judgments) to relate back to the date the security interest was perfected. It would be harsh indeed to hold now that the Bank lost its status as a secured creditor because it did not foreclose at the same time that it obtained the personal judgment and did not execute on the judgment.

The judgment below is reversed and the case is remanded to the Bankruptcy Court with directions to enter judgment in favor of the Bank of Colorado.

IT IS SO ORDERED.